1

2

3

4

5

6 **UNITED STATES DISTRICT COURT**

7

8 **DISTRICT OF ARIZONA**

9 United States of America,

10                 Plaintiff,

11 vs.

12 Celia Nataly Monteverde,

13                 Defendant.

14

15

CR 20-00166-TUC-JCH (JR)

**REPORT AND RECOMMENDATION**

16        This matter was referred to Magistrate Judge Rateau for pretrial matters. On

17 August 25, 2021, Defendant Celia Nataly Monteverde ("Defendant") filed a Motion

18 to Dismiss Indictment (Doc. 17). The Government responded on September 15, 2021

19 (Doc. 23) and Defendant replied on September 22, 2021 (Doc. 26). A hearing was

20 conducted on September 23, 2021. (Doc. 29). No witnesses testified at the hearing.

21 Defendant was not present at the hearing; her presence was waived by defense

22 counsel.

1

Having considered the matter, the Magistrate Judge recommends that the Motion to Dismiss Indictment be granted.   The Court further recommends that dismissal be with prejudice.

## I.     Facts[1]

On December 10, 2019, Defendant entered the United States from Mexico using the DeConcini Port of Entry in Nogales, Arizona.   Customs and Border Protection officers allegedly discovered cocaine and methamphetamine concealed in the vehicle she was driving.   Defendant was arrested and temporarily detained at her initial appearance on December 11, 2019.

A pretrial services report was prepared which indicated that Defendant had no prior convictions, had been a legal permanent resident of the United States since 2015 and had lived in Arizona with her common-law husband and their two United States Citizen children for three years in a home her husband was purchasing. Information from Immigration and Customs Enforcement ("ICE") indicated that while she was in the United States legally, Defendant was under removal proceedings.   The assigned Pretrial Services Officer recommended that Defendant be released.

Defendant next appeared with counsel at her detention hearing on December 13, 2019.   Over the Government's objection, Defendant was released on her own recognizance.   Among her release conditions, Defendant was ordered to appear at all

---

[1] The Court will not provide citations to undisputed facts argued by counsel either in their pleadings or at the hearing.

1   proceedings, report to pretrial services as directed and advise her attorney and

2   Pretrial Services in writing prior to changing her address (Arizona City, Arizona) or

3   phone number.

4   Defendant was also ordered not to travel outside the State of Arizona without

5   court permission, to surrender all travel documents by a specified date and not to

6   obtain a passport or other travel document during the pendency of the proceedings.

7   As a way of enforcing the travel restriction, on December 16, 2020, Pretrial Services

8   notified the U.S. Department of State, specifically the Office of Legal Affairs,

9   Passport Services, that Defendant was not permitted to apply for the issuance of a

10  passport and/or passport card during the pendency of the case.  (Doc. 7).[2]

11  After the detention hearing, contrary to the Court's order that Defendant not

12  travel outside of Arizona without Court permission, Defendant was taken into ICE

13  custody.  Based on the existence of an immigration detainer, she was removed from

14  the United States and returned to Mexico.

15  On the same day of her removal to Mexico, January 8, 2020, Defendant's case

16  was presented to a grand jury and Defendant was indicted.  An arraignment was

17  scheduled for January 24, 2020.  When Defendant did not appear for the arraignment,

18  the Court reset the hearing for February 7, 2020.

19  In the interim, on January 14, 2020, defense counsel advised the Government

20  that Defendant had been deported and asked that the Government dismiss the case.

21

22  [2] The Court refers to this fact as a way of illustrating that cooperation and
    coordination can easily occur between various agencies of the federal government.

3

1   The Government declined and instead offered to parole Defendant into the United

2   States for prosecution.  It suggested that an agent meet the Defendant at the port of

3   entry and transport her to and from the Court.  Contrary to the Court's order that

4   Defendant not change her address without Court permission, the Government advised

5   that Defendant's presence in the United States would only be temporary and would

6   not require lodging.  Defense counsel advised that he not spoken to his client since

7   her removal.

8       As expected, Defendant failed to appear at her arraignment on February 7,

9   2020, and the Court issued an arrest warrant.  The basis for the warrant was that

10  Defendant had not maintained contact with Pretrial Services as required by her

11  release conditions. (Doc. 27 at 4).

12  **II.   Legal Standard for Dismissal**

13      A district court may exercise its supervisory powers and dismiss an indictment

14  for three reasons: (1) to remedy a constitutional or statutory violation; (2) to protect

15  judicial integrity by ensuring that a conviction rests on appropriate considerations;

16  and (3) to deter future illegal conduct. *United States v. Barrera-Moreno*, 951 F.2d

17  1089, 1091 (9th Cir. 1991); *see also Untied States v. Hasting*, 461 U.S. 499, 505

18  (1983) (federal courts' "supervisory powers are threefold"). Dismissal of an

19  indictment "is appropriate when the investigatory or prosecutorial process has

20  violated a federal constitutional or statutory right and no lesser remedial action is

21  available." *Barrera-Moreno*, 951 F.2d at 1092.

22  . . .

4

### III.  Analysis[3]

In the motion before the Court, Defendant argues that in every criminal case involving an ICE detainer, the Government must make a choice between pursuing prosecution or removing the defendant. Defendant contends that the Government's decision to remove her in this case violates her constitutional and statutory rights and, as such, the indictment should be dismissed under the Court's supervisory powers.

In response, the Government contends it was not required to choose between prosecution and deportation and that the exercise of the Court's supervisory powers is inappropriate where, as here, the removal of the Defendant was not contrary to the Bail Reform Act ("BRA") or the Immigration and Nationality Act ("INA"). The Government also contends that no Sixth Amendment violation has resulted from Defendant's removal and that Defendant's speedy trial rights were tolled due to her failure to stay in contact with pretrial services. Finally, the Government argues that, should the Court determine dismissal is appropriate, it should be ordered without prejudice.

### A.  BRA and the INA

The interplay between the BRA and the INA under circumstances materially indistinguishable from those of this case has been addressed repeatedly by the

---

[3] This is not a case of first impression. Nor is this an isolated event. The Government in this District has known about and struggled with this issue for well over three years. During these years, lower courts have struggled with the tension between release orders pursuant the BRA and actions taken by ICE only to have the Government dismiss the case before it reaches the Ninth Circuit. Lower courts have not been able to receive the necessary guidance from our appellate court.

District Judges and Magistrate Judges of the District of Arizona. *See, e.g.*, *United States v. Sanchez-Vasquez*, No. CR-20-2239-TUC-JGZ (BGM), 2021 WL 4430835 (D. Ariz. June 23, 2021), *adopted in part by* 2021 WL 4427063 (D. Ariz. Sept. 27, 2021); *United States v. Escobar-Mariscal*, No. CR-19-2777-001-TUC-RM (DTF), 2020 WL 4284406 (D. Ariz. July 27, 2020); *United States v. Munoz-Garcia*, 455 F.Supp.3d 915 (D. Ariz. 2020); *United States v. Castro-Guzman*, No. CR-19-2992-TUC-CKJ (LCK), 2020 WL 3130395 (D. Ariz. May 11, 2020), *adopted by* 2020 WL 3130397 (D. Ariz. June 1, 2020); *Lutz*, 2019 WL 5982827; *United States v. Coronado-Vejar*, No. CR-19-01962-001-TUC-RM (BGM), 2020 WL 2782502 (D. Ariz. May 29, 2020); *United States v. Calderon-Lopez*, No. CR-19-003027-001-TUC-RM (DTF), 2020 WL 2616034 (D. Ariz. May 22, 2020); *United States v. Laurean-Lozoya*, No. CR-18-0700-TUC-RM (BGM), 2018 WL 5928169 (D. Ariz. Oct. 23, 2018), *adopted by* 2018 WL 5924181 (Nov. 13, 2018).

It is unfortunate for defendants in this District that the Government persists in pursuing a course of action that has resulted in the regular recurrence of the need for the Court to address the implications of the Government's decision to prosecute an individual under the federal criminal laws while, prior to the criminal trial, removing that same individual from the United States under the INA. However, the impact on defendants notwithstanding, it is fortunate for this Court that the issue has been addressed so frequently that this Court's analysis can be informed by previous decisions.

1    "This case involves a tension between lawful release orders under the [BRA]

2    and actions taken by ICE under the [INA]." *United States v. Lutz,* No. CR-19-00692-

3    TUC-RM (BGM), 2019 WL 5892827, at *2 (D. Ariz. Nov. 12, 2019). As the district

4    court noted in *Munoz-Garcia*, "[a] court's decision to release a defendant pending

5    trial despite the existence of an ICE detainer does not necessarily strip ICE of its

6    authority to detain and remove an alien." 455 F.Supp.3d at 919. Significantly,

7    however, the court further noted that although "ICE may retain the *authority* to

8    remove a defendant out on bond, . . . [that] does not necessarily mean that ICE may

9    do so without consequence in the defendant's criminal prosecution[.]" *Id.* "'If the

10   government,' however, by placing a defendant 'in immigration detention or removing

11   [her], jeopardizes the district court's ability to try [her], then the district court may

12   craft an appropriate remedy.'" *Id.* (quoting *United States v. Santos-Flores*, 794 F.3d

13   1088, 1091 (9th Cir. 2015).

14         In this case, Defendant is no longer in ICE custody and was long-ago removed

15   from the United States. Thus, the issue is not whether the Government violated the

16   BRA or INA by removing Defendant. Rather, the issue is whether the Government's

17   actions have violated the Defendant's rights such that the indictment must be

18   dismissed and, if so, whether the dismissal should be with or without prejudice. Here,

19   Defendant's removal, despite the pending prosecution, violated her Sixth

20   Amendment rights and the Speedy Trial Act and, as such, dismissal of the indictment

21   with prejudice is warranted.

22   . . .

7

**B.     Speedy Trial Act**

Defendant argues that she has been deprived of the right to a speedy trial. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI; *see also Barker v. Wingo*, 407 U.S. 514, 519 (1972). "To give effect to this Sixth Amendment right, congress enacted the Speedy Trial Act, which sets specified time limits after arraignment or indictment within which criminal trials must commence. *United States v. Olsen*, 995 F.3d 683, 686 (9th Cir. 2021) (citing Pub. L. No. 93-619, 88 Stat. 2076 (1975) and *Furlow v. United States*, 644 F.2d 764, 768-69 (9th Cir. 1981) (per curiam) (describing the Speedy Trial Act as the Sixth Amendment's "implementation")).

The Speedy Trial Act requires that a defendant be tried within 70 days from the filing date of the information or indictment, or from the date the defendant makes an initial appearance. 18 U.S.C. § 3161(c)(1). However, due to the need for flexibility to address the circumstances of each case, the Speedy Trial Act "includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* 18 U.S.C. § 3161(h).

Here, Defendant initially appeared before a judicial officer on December 11, 2019, and her indictment was returned on January 8, 2020. As is patently obvious, unless months of delay are excluded, the 70 days allowed under the Speedy Trial Act expired long ago. In its response, the Government does not address Defendant's

speedy trial argument, but at the hearing indicated that the time since Defendant's removal should be excluded because she failed to keep in contact with pretrial services. For several reasons, the Court rejects the Government's contention.

One justification for the exclusion of time in calculating the 70-day period is "the absence or unavailability of the defendant or an essential witness." 18 U.S.C. § 3161(h)(3)(A). However, for that basis for exclusion to apply:

> a defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence.

18 U.S.C. § 3161(h)(3)(B). The burden of going forward is on the Government to produce evidence in connection with any exclusion of time alleged under subparagraph 3161(h)(3). *See* 18 U.S.C. § 3162(a)(2).

Here, of course, the Defendant is absent and unavailable because she was removed by the Government. There is nothing in the record from which the Court could conclude that Defendant was attempting to avoid apprehension or prosecution by being removed. She had already been apprehended and made an initial appearance at the time of her removal and likely would have continued to appear in court to face the charges against her if ICE had not removed her to Mexico.

The Government also has not indicated that Defendant's whereabouts are unknown and, given that it was the Government which removed her, it would likely be in the best position to do so. The Government has presented no evidence of its diligence in determining her whereabouts. Defense counsel indicated that the

Government told counsel to find Defendant and that she could be paroled into the United States. By making such an offer, "the Government is essentially asking the Defendant and defense counsel to expend additional resources defending the case because the Government chose to prioritize Defendant's deportation over [her] criminal prosecution." *Calderon-Lopez*, 2020 WL 2616034, at *3. The Government cannot simply side-step its diligence obligations by removing a defendant and shifting the burden to defense counsel. Moreover, because neither party claims to know where Defendant is located, "[f]uture attempts by the government to locate Defendant would be infeasible and untimely." *Castro-Guzman*, 2020 WL 3130395, at *6.

Interestingly, by suggesting to defense counsel that a Government agent meet Defendant at the port of entry and transport her to and from Court (and presumably take her into custody in violation of the Court's release order) the Government in essence changed the terms of the Court's release order.  Instead of residing in Arizona as ordered by the Court, the Government told Defendant that her presence in the United States was only temporary; she was instead to reside in Mexico.  Instead of not leaving the State of Arizona without court permission as ordered by the Court, the Government told Defendant to leave Arizona altogether and only come back when the Government made the necessary arrangements.  Instead of not obtaining any travel documents to travel outside of the State of Arizona as ordered by the Court, the Government told Defendant that instead they would parole her into the country for prosecution.

1    Based on the foregoing, the Court finds that the Government has not satisfied

2   its burden for a finding of excludable delay based on Defendant's absence. For the

3   same reasons discussed above, even the delay attributable to the instant motion is not

4   excludable. *See United States v. Resendiz-Guevara*, 145 F.Supp.3d 1128, 1138 (M.D.

5   Fla. 2015) ("any delay also caused by the pending motion also is a result of

6   Defendant's deportation; and therefore such delay should not be excluded from the

7   speedy trial calculation"). Because the Government has violated the Speedy Trial

8   Act, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2) ("If a defendant is not

9   brought to trial within the time limit required by section 3161(c) as extended by

10   section 3161(h), the information or indictment shall be dismissed on motion of the

11   defendant.").

12       **C.      Sixth Amendment right to counsel**

13       The Sixth Amendment provides that "[i]n all criminal prosecutions, the

14   accused shall enjoy the right . . . to have compulsory process for obtaining witnesses

15   in his favor, and to have the assistance of counsel for his defense." U.S. Const.

16   amend. VI. The Supreme Court has recognized that "the right to personal presence at

17   all critical stages of the trial and the right to counsel are fundamental rights of each

18   criminal defendant . . .." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). "[T]o deprive a

19   person of counsel during the period prior to trial may be more damaging than denial

20   of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985).

21       Defense counsel indicates that he has had no access to his client and has been

22   unable to discuss the case or plan a strategy. The Government nevertheless contends

11

1   that Defendant's right to counsel has not been violated because she could consult

2   with counsel by telephone or can be paroled into the United States to meet with

3   counsel. While hypothetically the Government's contentions could prove to be true,

4   the record before the Court includes no evidence that Defendant has access to a

5   phone, and both parties have indicated that they do not know Defendant's

6   whereabouts. Moreover, even if the Government could find Defendant and parole her

7   into the United States to meet with counsel, such an arrangement would place

8   additional burdens on Defendant and her attorney. *See Calderon-Lopez*, 2020 WL

9   2616034, at *3. Such an arrangement is necessitated solely by the Government's

10  election to remove Defendant and unduly impairs her right to counsel. *See Nordstrom*

11  *v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) ("When the government deliberately

12  interferes with the confidential relationship between a criminal defendant and defense

13  counsel, that interference violates the Sixth Amendment right to counsel if it

14  substantially prejudices the criminal defendant."). "[T]he situation could have been

15  avoided had the prosecution coordinated with ICE to pursue Defendant's prosecution

16  prior to [her] deportation." *Calderon-Lopez*, 2020 WL 2616034, at *3.

17      **D.      Remedy**

18      Having concluded that the Government's actions have resulted in the violation

19  of Defendant's rights under both the Speedy Trial Act and the Sixth Amendment,

20  dismissal is appropriate. *See United States v. Santos-Flores*, 794 F.3d 1088, 1091

21  (9th Cir. 2015) ("if the government, by placing [a defendant] in immigration

22  detention or removing him, jeopardizes the district court's ability to try him, then the

12

1    district court may craft an appropriate remedy.") (citing *United States v. Trujillo-*

2    *Alvarez*, 900 F.Supp.2d 1167, 1179-81 (D. Or. 2012)); *United States v. Alvarez-*

3    *Perez*, 629 F.3d 1053, 1062 (9th Cir. 2010) (under 18 U.S.C. § 3162(a)(2), when the

4    requirements of the Speedy Trial Act are violated, and a "defendant is not brought to

5    trial within the applicable 70-day time limit, the indictment must be dismissed.").

6         The Government contends that any dismissal should be without prejudice

7    because it was not trying to skirt around the Court's dismissal order under BRA and

8    emphasizes that ICE, and not the Department of Justice, elected to remove

9    Defendant. This argument has previously been addressed and rejected in this district:

> 10    "The fact that ICE will not agree or cannot be trusted to delay deportation--that separate agencies within the Executive Branch do not
> 11    communicate and cooperate--cannot serve to deprive a defendant of his rights" under the Constitution. *United States v. Argueta-Espinoza*, No.
> 12    4:18MJ3133, 2018 WL 4492226, at *2 (D. Neb. Sept. 19, 2018). The fact that ICE has the authority to remove a defendant "does not
> 13    necessarily mean that ICE may do so without consequence in the defendant's criminal prosecution[.]" *Munoz-Garcia*, 2020 WL
> 14    1929204, at *2. By deporting defendants regardless of the resulting prejudice to criminal prosecutions, ICE displays an "apparent
> 15    willingness to prejudice the interests of the people of the United States and the constitutional rights of the accused, with resulting waste of
> 16    DOJ, court, and defense resources." *United States v. Boutin*, 269 F.Supp.3d 24, 28-29 (E.D.N.Y. Dec. 20, 2017). The problem in this
> 17    case lies not with any action attributable to Defendant but instead with the fact "that two Article II agencies will not coordinate their respective
> 18    efforts." [*United States v.*] *Barrera-Omana*, 638 F. Supp. 2d [1108] at 1111-12 [D. Minn. 2009]. "It is not appropriate for an Article III judge
> 19    to resolve Executive Branch turf battles" and "run interference for the prosecuting arm of the government." *Id.* at 1112. If ICE is unwilling to
> 20    exercise its authority to delay a deportation when a criminal prosecution is pending, "'it is a matter for the Executive Branch to
> 21    resolve internally.'" *Boutin*, 269 F. Supp. 3d at 29 (quoting *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) (per
> 22    curiam)).

1   *Calderon-Lopez*, 2020 WL 2616034, at *2.

2   Because ICE, by removing Defendant from the United States, has jeopardized

3   the district court's ability to conduct a trial, "the district court may craft an

4   appropriate remedy." *Santos-Flores*, 794 F.3d at 1091. "It is self-evident that

5   dismissal with prejudice always sends a stronger message than dismissal without

6   prejudice, and is more likely to induce salutary changes in procedures, reducing

7   pretrial delays." *United States v. Taylor*, 487 U.S. 326, 342 (1988). Here, the Court

8   finds that dismissal of the indictment with prejudice is appropriate. Defendant has

9   been removed from the United States and her speedy trial rights and right to counsel

10  have been and will continue to be irreparably violated. *See Coronado-Vejar*, 2020

11  WL 2782502, at *3.   The Government, acting through ICE, has repeatedly been

12  rebuked for proceeding in this manner. Given that Defendant's removal resulted in

13  the violation of Defendant's Sixth Amendment right to counsel and her speedy trial

14  rights, only a dismissal with prejudice will adequately redress the violations. *See*

15  *Castro-Guzman*, 2020 WL 3130395, at *6 (dismissing indictment with prejudice

16  based on speedy trial and right to counsel violations); *Munoz-Garcia*, 455 F.Supp.3d

17  at 920 (same). Although this remedy largely has proven ineffective in deterring the

18  resulting statutory and constitutional violations, it is the most severe remedy at the

19  Court's disposal and is therefore appropriate.

20  . . .

21  . . .

22  . . .

14

## IV.    Recommendation

Based on the foregoing, the Magistrate Judge **recommends** that the District Court, after an independent review of the record, **GRANT** Defendant's Motion to Dismiss Indictment (Doc. 17) **with prejudice**.

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If any objections are filed, this action should be designated case number: **CR 20-00166-TUC-JCH**.  Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 7th day of October, 2021.


Honorable Jacqueline M. Rateau
United States Magistrate Judge